GUARANTY NATIONAL
INSURANCE CO.

v.

CHESTER COUNTY HOUSING AUTHORITY, Harford Mutual Insurance Co., Charles Blosenski, Inc., Zurich–American Insurance Co., and Edward Oliver.

Civ. No. 88–5340.

United States District Court,
E.D. Pennsylvania.

June 12, 1989.

Peter Miller, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for Guaranty Nat. Ins. Co.

Mark Schultz, Sherr & Zuckerman, Norristown, Pa., for Zurich–American Ins. Co.

William Conroy, Philadelphia, Pa., for Chester County Housing Authority.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This diversity action arises out of the terms of a stipulation and settlement

agreement that ended a personal injury suit in the Philadelphia Court of Common Pleas, *Brunson v. Oliver*, No. 40 (July Term 1983). In the underlying state suit, plaintiff Moses Brunson sued for damages for injuries he sustained when a taxicab in which he was a passenger collided with a trash dumpster in Coatesville, Chester County, Pennsylvania. Brunson sued Edward Oliver, the driver of the vehicle, Metro Transportation Company, t/a Yellow Cab Company, who owned the vehicle ("Metro Transportation"), and Chester County Housing Authority ("Chester County"), who owned and maintained the road on which the accident occurred; Chester County brought in Charles Blosenski, Inc. ("Charles Blosenski"), the owners of the dumpster, as a third party defendant.

The parties settled the state court action with a $450,000 payment to Mr. Brunson in full settlement of all claims. By the terms of a July 1987 stipulation, Guaranty National Insurance Companies ("Guaranty"), the Harford Mutual Insurance Company ("Harford"), and Zurich–American Insurance Company ("Zurich")—the insurers for Metro Transportation, Chester County, and Charles Blosenski, respectively—each contributed to the $450,000 payment, reserving the final division of liability for negotiation. Complaint, Exh. D. The stipulation further provided that in the event that the three companies could not agree on the percentage of each company's contribution to the total of $450,000,

the insurance carriers will litigate *inter se* in a court of competent jurisdiction the following issues to determine the amount, if any, of each carrier's responsibility for the accident in question:

1. Respective comparative negligence, if any, of defendants;

2. Agency relationship, if any, between Edward Oliver and Metro Transportation Company, t/a Yellow Cab of Philadelphia; and

3. Coverage obligations, if any, of Guaranty National Insurance Company with respect to Edward Oliver.

Stipulation, Complaint, Exh. D, at 3. Plaintiff in the present action seeks declaratory relief determining its obligation to cover Edward Oliver and the percentage of each company's liability.

Pending before the court are three motions for partial summary judgment.[1] The cross-motions all center around the issue of whether, at the time of the accident, Edward Oliver was covered under a Guaranty National policy insuring the Metro Transportation taxicab. Guaranty National contends that it should make no contribution to the *Brunson* settlement, because Mr. Oliver was neither (1) a named insured nor (2) a user covered by permission of the named insured. Conversely, Zurich maintains that Mr. Oliver was a named insured and/or a permitted user. Harford and Chester County join in Zurich's motion and also seek to estop Guaranty National's assertion of non-coverage.

It is appropriate to grant summary judgment pursuant to Federal Rule of Civil Procedure 56 if, after review of all evidentiary material in the record in light favorable to the non-movant, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Because the cross-motions of plaintiff and defendants address the same issues, I will evaluate the evidence for each issue in turn.

## I. Named Insured

 The initial question is whether Edward Oliver was covered as a "named insured" under Guaranty National's policy EAL100300, which covered the taxicab for the period during which the accident occurred. Complaint, Exh. C. Item 1 of the policy designates the "Named Insured" as "Metro Transportation Co. T/A Yellow Cab Co. and/or Other Individuals or Entities Trading As Yellow Cab Co. or Operating Under the Authority of Metro Transporta-

---

1. The summary judgment motions of defendants Harford and Zurich will be treated as motions for partial summary judgment insofar as they address only the issue of Guaranty National's obligation, and not the division of negligence among all parties.

tion Co." Moving defendants contend that Mr. Oliver, as a leased driver,[2] was "trading as Yellow Cab Co. or operating under the Authority of Metro Transportation Co." within the meaning of the designation of the named insured. Plaintiff contends that the designation, both on its face and in the context of the whole policy, does not include leased drivers.

There is no dispute over the content of the policy, only over the interpretation of the term "named insured." It is a general principle under Pennsylvania law that ambiguities in an insurance contract are to be read against the drafter, *see Tidewater Grain Co. v. S.S. Point Manatee,* 614 F.Supp. 29 (E.D.Pa.1984). Nevertheless, the courts are to read policy provisions so as to avoid ambiguities, if the plain language of the policy permits, and attempt to view the policy in its entirety, giving effect to all portions of the contract. *Treasure Craft Jewelers v. Jefferson Ins. Co.,* 583 F.2d 650, 652 (3d Cir.1978).

The meaning of the phrase used to designate the policy's "named insured" may be determined from an examination of the policy as a whole. The first indication of the identity of the named insured arises from the policy's limitation to liability in excess of a self-insured retention of $25,000. The information recorded under "Name of Primary Insurer" on the policy is "Self–Insured." Thus, the policy indicates that the named insured is responsible for providing insurance coverage up to $25,000. It is uncontested that Metro Transportation carried this insurance for every taxicab. The individual leased drivers of its taxicabs did not, and were not required to, carry $25,000 of self-insurance. The fact that Metro Transportation alone carried the required self insurance is a strong indication that only Metro Transportation—the company, and not its individual employees—was the named insured.

Similar references to the "named insured" in the contract also suggest that leased drivers could not have been intended

to be named insured under the terms of the policy. For example, Section 7 of the policy provisions allows for cancellation of the policy by the named insured. If leased drivers were named insureds of the policy, any driver, such as Mr. Oliver, could cancel the insurance policy—a most implausible construction. Similarly, the policy provides that " 'named insured' means any individual named in item 1 of the declarations and also includes the spouse of a resident of the same household." Assuming *arguendo* that unidentified leased drivers could be regarded as "named in item 1," all of their spouses would be named insured also, another result that could not have been intended.

Finally, it is significant that an endorsement attached to the policy lists by name five entities, such as a bank, and one individual as "additional insured but only as respects to the [sic] named insured's operations." Although this list appears to include "other individuals or entities trading as Yellow Cab Co. or operating under the authority of Metro Transportation Co.," it does not name the leased drivers of Metro Transportation's taxicabs. It appears from the lack of mention of leased drivers in the endorsement and the policy terms reviewed as a whole that Metro Transportation did not intend to designate leased drivers as either named or additional insured.

This inference is bolstered by the affidavits of Guaranty National's Senior Vice President Richard Rock and Metro Transportation Company's Vice President Robert Seaner. Plaintiff's motion, Exhs. D & E. To the extent that this additional evidence of mutual intent in the contract's formation bears on the interpretation of an arguably ambiguous insurance contract provision, I find it relevant to the present determination. *See Harbor Insurance Co. v. Lewis,* 562 F.Supp. 800, 804 (E.D.Pa.1983). The affiants declare on behalf of both parties to the insurance contract that neither party ever intended or understood that leased drivers could be considered named insureds

---

**2.** Mr. Oliver had signed a lease agreement with Metro Transportation to take out cars on a

recurring basis. Lease, Zurich Motion, Exh. H.

under the policy or otherwise provided with blanket coverage. Rather, individuals or entities to be insured in addition to Metro Transportation were identified on the separate endorsement.[3]

Zurich, Harford, and Chester County, in their replies to plaintiff's motion and in their own motions, do not challenge the factual evidence on the record, but maintain that, on the face of the policy, Mr. Oliver is a named insured. They base this argument almost entirely on the language of the designation. The sole additional evidence raised by defendants, the deposition testimony of Metro Transportation's Director of Insurance Operations, Marshall Sherman, does not bear on this point. Mr. Sherman speculated as to the extent of coverage as a user with permission, not coverage as a named insured. Sherman Depo. Zurich Motion, Exh. D.[4]

Because defendant's interpretation of the "named insured" under the Guaranty National policy enlarges the scope meaning of the full contract beyond reason, I conclude as a matter of law that the Guaranty National policy does not include Mr. Oliver as a named insured.

*II. Permitted use coverage*

■ Ordinarily, a leased driver of a Metro Transportation taxicab on a fare run originating in Philadelphia is covered under the policy's omnibus clause for permitted users. This clause at Section III provides in pertinent part: that

(D) Each of the following is an insured under this insurance to the extent set forth below:

. . . .

(3) any other person while using an owned automobile or a hired automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission. . . .

Policy, Complaint, Exh. C. Moving defendants claim that regardless of whether Mr. Oliver was a named insured under the policy, he was covered by this omnibus clause. Plaintiff contends that at the time of the accident, however, Mr. Oliver was acting beyond the scope of permission given by Metro Transportation and therefore did not qualify for coverage as a permitted user.

Because "[t]he law of Pennsylvania is clear that the term 'actual use', as employed in these policy definitions, requires that permission must be shown for the particular use to which the car is being put at the time of the accident," the nature of the trip during which the accident occurred is critical to a determination of whether Mr. Oliver was using the taxicab with the permission of Metro Transportation. *Maryland Casualty Co. v. Marshbank*, 226 F.2d 637, 640 (3d Cir.1955).

It is undisputed that Mr. Oliver was a lessee of taxicabs from Metro Transportation. Lease, Zurich Motion, Exh. H. He had picked up the taxicab that was involved in the accident from the Grays Ferry Yellow Cab Company on the morning of the accident. Oliver Depo., Harford Motion, Exh. A, at 16. He then drove his fiancee Judy Brunson, their infant daughter, and his fiancee's uncle, Moses Brunson, from Philadelphia to Coatesville before the accident. There, the group stopped at Mr. Oliver's mother's house. About thirty minutes later, Mr. Oliver and Mr. Brunson went in the taxicab to a nearby deli to buy beer and cigarettes for the group's consumption. It was on the return from this trip that the accident occurred. *Id.* at 20.

Mr. Oliver's use of the taxicab arguably exceeded the scope of Metro Transportation's permission in two ways. First, it is disputed whether Mr. Oliver lawfully obtained possession of the taxicab on the day of the accident. Mr. Oliver's training with Metro Transportation apparently included instructions that leased drivers may not

---

**3.** Plaintiff contends that leased drivers were covered under an omnibus clause covering permitted use located at Section III(D)(3) of the policy.

**4.** Similarly, Harford reasons that because Mr. Oliver allegedly obtained permission for the Coatesville run, he was a named insured. This confuses coverage of named insureds with coverage of permitted users.

transport persons unless they are *fare-paying* passengers travelling routes within the Pennsylvania Utility Commission ("PUC") certified authority for the company. Seaner Aff., Plaintiff's Motion, Exh. H.[5] Guaranty National contends that Mr. Oliver intended to use the car for a personal trip to his mother's, and that the alleged fare from Mr. Brunson was "merely a subterfuge." Plaintiff's Motion, at 9.

Mr. Brunson never actually paid any fare to Mr. Oliver. There is also evidence that Mr. Brunson only asked to go to Coatesville after discovering that Mr. Oliver was already planning to go to his mother's. Brunson Depo., Plaintiff's Surreply, Exh. B, at 20–21; Oliver Depo., Harford Reply, Exh. A, at 45. However, there is also evidence that Mr. Oliver telephoned the company to determine the flat fare for a drive to Coatesville, and that he then lowered this rate to $30.00 after negotiation with Mr. Brunson. *Id.* at 45–46, 17. Mr. Oliver indicated that this fare was his inducement for the trip. *Id.* at 40. Mr. Oliver also stated that he reported the Coatesville drive to the company over the radio as a fare run. *Id.* at 46.

Absent any further evidence of fraud or deception, it remains at best disputed whether Mr. Oliver obtained the car with fraudulent intent and whether the drive to Coatesville was a fare run or purely personal. *Cf. Federal Kemper Insurance Co. v. Neary*, 366 Pa.Super. 135, 530 A.2d 929 (1987) (finding permission obtained through deception does not impart coverage).

The second argument bearing on the permissibility of Mr. Oliver's use of the taxicab focuses on the nature of the trip to the deli. Mr. Oliver himself described the trip to the deli differently from the trip to Coatesville. He reports that Mr. Brunson may have "asked me how much would it normally cost to make a run for, you know, that distance. He was just asking." Oliver Depo., at 48–49. However, Mr. Brunson did not offer to, or pay a fare for, the trip to the deli. *Id.* at 48. Mr. Oliver did not ask Mr. Brunson to pay a fare and he did not telephone Metro Transportation to report the run from his mother's to the deli. *Id.* at 48–49.[6]

Defendants do not dispute that the drive to the deli was not for an independent fare. They contend, based on Mr. Brunson's deposition testimony, that the trip to the deli was merely part of the overall fare trip to Coatesville and back to Philadelphia, and therefore permitted.[7] In any event, regardless of whether the route was authorized within PUC regulations or Metro Transportation's own rules, the defendants contend that the trip was at most a slight and inconsequential deviation from authorized use, and therefore should not affect coverage. *See, e.g., Laroche v. Farm Bureau Mutual Automobile Insurance Co.*, 335 Pa. 478, 7 A.2d 361 (1939); *General Accident Insurance Co. v. Margerum*, 375 Pa.Super. 361, 544 A.2d 512 (1988).

There is scant evidence on the record indicating the range of permitted use of Metro Transportation taxicabs by a leased driver. Metro Transportation's vice president, Robert Seaner's affidavit implies that the PUC and fare rules presented at the routine orientation of leased drivers define permitted use for the purposes of the omnibus insurance clause. Seaner Aff., Plaintiff's motion, Exh. H. However, other Metro Transportation employees have provided some testimony that small personal stops for cigarettes and lunch are accepted, Du-

---

**5.** Harford and Chester County claim that Mr. Oliver did not understand the geographical restrictions. Harford Reply, at 6 (citing to Oliver Deposition, at 11).

**6.** Even had a proper fare been arranged, however, any run from Mr. Oliver's mother's house in Coatesville to the deli in the same city would not be strictly within Metro Transportation's PUC license, which does not allow it to make fare runs originating in Coatesville. *See* 52 Pa. Code § 29.312(4)(5) (governing territorial restrictions on service outside of the area authorized by PUC certificate).

**7.** Brunson Deposition, Harford Motion, Exh. B, at 63:

Brunson. He didn't mention anything about being paid for going to the store.

. . . .

Mr. Krantz. It was your understanding, therefore, it was included with that trip; is that correct?

Brunson. Yes.

bravski Depo., Plaintiff's Reply, Exh. F, and that pleasure trips by leased drivers may be acceptable, Sherman Depo., Zurich Reply, Exh. D. Absent details of the company's practice and more details of the deli run itself, it remains disputed whether the trip was, either as part of the alleged fare run or as a personal trip, within the practice of Metro Transportation or only an inconsequential deviation from its permitted use.

I conclude that the present evidentiary record, when evaluated in the light most favorable to each of the moving parties, cannot resolve the material issues of fact regarding Mr. Oliver's procurement of the taxicab and the permissibility of the trip to the deli. I will therefore deny plaintiff's motion because although Mr. Oliver was not a named insured, his use of the car may have been permitted. I will also deny Zurich's motion on the ground that Mr. Oliver's use of the taxicab at the time of the accident may not have been permitted, and deny Harford and Chester County's motion insofar as it asserts the same argument.

### III. Estoppel of Denial of Coverage

■ In the alternative to arguing that Mr. Oliver was covered by the policy, defendants Harford and Chester County maintain that Guaranty National is now estopped from denying coverage of Mr. Oliver now. Guaranty provided Mr. Oliver's exclusive legal representation since February 1984 despite receiving an investigator's report stating that Mr. Oliver "was on personal business at the time of the accident, and the claimant was a non-paying passenger." Letter of Feb. 24, 1984, Harford Motion, Exh. E. The company first sent Mr. Oliver a letter informing him of the company's reservation of a defense of non-coverage in January, 1986, a year and a half before the final settlement of the state court claim. Harford and Chester County argue that representation of Mr. Oliver without reservation for 23 months after receipt of the investigator's report waived Guaranty National's right to now deny coverage.

It is generally the rule that an insurance company may not undertake the defense of a suit in a manner that induces the defendant to relinquish management of the case, and then, absent timely notice to the insured, deny coverage and liability under the policy. *Aetna Life & Casualty Co. v. McCabe*, 556 F.Supp. 1342, 1355–56 (E.D. Pa.1983). However, it is also well established that "the party seeking to take advantage of the doctrine of estoppel must have relied to his detriment on some action or inaction by the other party." *Insurance Co. of North America v. McCleave*, 462 F.2d 587, 588 (3d Cir.1972).

Insofar as Harford and Chester County claim that Guaranty National's position injures their own interests in the present litigation, they cannot prevail on equitable grounds.[8]

The stipulation giving rise to this litigation reserves Guaranty National's right to litigate its exposure and responsibility for coverage. It contemplates both findings of coverage and non-coverage and sets out sample calculations of the responsibility of each signatory. Harford and Chester County were signatories to this stipulation, and present no evidence of ever having detrimentally relied on Guaranty National's

---

8. It is also clear that no prejudice will result to Mr. Oliver from Guaranty National's litigation of the coverage issue in the present case. Guaranty National's argument of non-coverage for the purposes of the settlement division in this court is not inconsistent with its full representation of Mr. Oliver in the state court action. Mr. Brunson's claim has been completely satisfied by the terms of the $450,000 settlement. Under the stipulation, that payment will be assumed solely by the three insurance companies; Mr. Oliver will have no responsibility for any payment. The stipulation provides, for example, that if there is

a judicial finding of negligence to all defendants such as: 50% to Edward Oliver, 25% to Chester County Housing Authority, 25% to Charles Blosenski, Inc. and *no* coverage owed by Guaranty National Insurance Companies to Edward Oliver; the $450,000 payout will be as follows:

| | |
|---|---|
| Guaranty National | $0.00 |
| The Harford | $225,000 |
| Zurich–American: | $225,000. |

Stipulation, Complaint, Exh. D, at 3–4.

legal representation of Mr. Oliver. They have no basis for now attempting to estop Guaranty National's litigation of the issues identified in the stipulation.

I therefore conclude that Guaranty National is not estopped from asserting non-coverage in the present lawsuit, and that the motion for partial summary judgment by Harford and Chester County will be denied.

An appropriate order follows.

## ORDER

For the reasons stated in the accompanying memorandum, it is hereby ORDERED and DIRECTED that:

1) Plaintiff's motion for partial summary judgment is DENIED;

2) Defendant Zurich–American Insurance Company's motion for summary judgment is DENIED;

3) Defendant Harford Mutual Insurance Company and Chester County Housing Authority's motion for summary judgment is DENIED; and

4) A joint pretrial memorandum will be filed by June 26, 1989.