**MERCHANTS MUTUAL INSURANCE CO., Plaintiff,**

v.

**Hubert & Rose ARTIS, Policy Holder–Defendants,**

and

**Julia Jones, Individually and as Administratrix of the Estates of Preston Moye and Keith Moye, and Lynda McLaughlin, Administratrix of the Estate of Robert Lavenhouse, and Wanda Hartwell, Individually and as Administratrix of the Estate of Anwan Reid, Assignee–Defendants.**

**Civ. A. No. 93–0769.**

United States District Court, E.D. Pennsylvania.

Nov. 21, 1995.

---

Katherine M. Mezzanotte, James L. Moore, Jr., Mark W. Voigt, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, PA, Stephen A. Sheinen, Harvey, Pennington, Herting and Renneisen, Ltd., Philadelphia, PA, Robert L. Sanzo, Law Offices of Herbert Monheit, Philadelphia, PA, for Merchants Mutual Insurance Company.

Frank A. Rothermel, Law Offices of Herbert Monheit, Philadelphia, PA, for Julia Jones, Individually and as Administratrix of the Estates of Preston Moye and Keith Moye, Lynda McLaughlin, Administratrix of

the Estate of Robert Lavenhouse, Wanda Hartwell, Individually and As Administratrix of the Estate of Anwan Reid.

### MEMORANDUM AND ORDER

McGLYNN, District Judge.

This declaratory judgment action arises from claims made against Merchant Mutual's insureds, Hubert and Rose Artis (hereinafter the Artises), by the estates of four foster children who perished in a fire in the Artises' foster home on August 31, 1989. Before the court are Cross–Motions for Summary Judgment. Plaintiff, Merchants Mutual contends that it is not contractually bound to provide a defense or indemnification to the Artises because the homeowners policy it issued to them specifically excludes coverage for claims made by "residents of the household," which includes the deceased foster children. Defendants Julia Jones, Lynda McLaughlin, and Wanda Hartwell, the administratrices of the deceased foster children's estates (hereinafter the Estates or Intervenors), filed a Cross–Motion for Summary Judgment, asserting that the Plaintiff should be estopped from denying coverage. For the reasons that follow, Plaintiff's Motion will be GRANTED and Defendants' Motion will be DENIED.

### I.  Factual Background

On the evening of August 31, 1989, a fire occurred in the foster home of Rose and Hubert Artis, located at 6302 North Park Avenue in Philadelphia. Four of the seventeen foster children residing in the Artises' home perished. Prior to the fire, Merchants Mutual issued and delivered a homeowners insurance policy to the Artises. The policy provided as follows with regard to liability coverage:

### SECTION II—EXCLUSIONS

It is agreed that under Section II—EXCLUSIONS OF THE POLICY, paragraph 2 is subject to the additional exclusion that Coverage E—Personal—Liability, does not apply to:

f.  bodily injury to you and any insured within the meaning of part a. or b. of Definition 3. "insured."

Further, the policy defines an "insured" as follows:

3. "insured" means you and the following residents of your household:

a.  your relatives

b.  any other person under the age of 21 who is in the care of any person named above.

The policy also defines "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom."

After the fire, the administratrices of the four deceased foster children filed civil actions against the Artises. On September 8, 1989, after receiving notice of the fire, an insurance adjuster working on behalf of Merchants wrote a letter to the Artises stating that Merchants Mutual would conduct an investigation of the fire under a full reservation of rights. In the fall of 1989, the Artises' son-in-law, William Smith, began settlement negotiations with the Estates. Merchants Mutual had not retained Smith to conduct these negotiations, nor had the insurer authorized the Artises to conduct independent settlement negotiations. A Merchants Mutual claims manager sent a second reservation of rights letter to the Artises on December 6, 1989. This letter stated that the Artises' defense would be conducted under a full reservation of rights, and that Merchants Mutual would not be liable for any settlement negotiated by Mr. Smith. At the request of the Artises, Smith ceased his negotiations on their behalf.

After the estates filed the underlying wrongful death action, Merchants Mutual retained the law firm of Margolis, Edelstein, Scherlis, Sarowitz & Kramer (hereinafter Margolis) to defend the Artises. The parties agree that Margolis undertook a thoroughly competent defense of the Artises. However, on May 27, 1992 Merchants Mutual sent a disclaimer letter to the Artises. The letter explained that the deceased foster children were "insureds" under the policy, and that the claims of the foster children were excluded from coverage under the "resident insured" exclusion. Thereafter, Margolis withdrew as counsel for the Artises. William

Smith again resumed settlement negotiations with the Estates. On January 4, 1993, the parties entered into a settlement whereby a judgment for $1.6 million was entered in favor of the Estates. The settlement was structured so that the Estates gave up their rights to pursue the Artises' personal assets in exchange for an assignment of the Artises' claims against Merchants Mutual.

In February 1993 Merchants Mutual began this action against the Artises, seeking a declaration that the Artises were not entitled to a defense or indemnification under the policy. On June 30, 1994, Merchants Mutual filed a Motion for Summary Judgment based on the "resident insured" exclusion. On October 4, 1994, the court denied Plaintiff's Motion without prejudice pending further discovery regarding the status of each decedent foster child, the duration of their stay at the Artis household prior to the fire, the long-term placement plans, and whether the children's placement with the Artises was temporary or permanent. The parties have now concluded discovery and on August 30, 1995, Plaintiff renewed its Motion for Summary Judgment. On September 11, 1995, the Estates filed a Cross–Motion for Summary Judgment, alleging that the deceased foster children were not "insureds" under the policy and that the Plaintiff's withdrawal of the Artises' coverage and defense was without justification. In addition, Defendants argue that Merchants Mutual should be estopped from asserting its "resident insured" exclusion because: (1) the Artises detrimentally relied on Merchants Mutual, since the insurer provided them with a defense for nearly three years after the fire; (2) the insurance contract was ambiguous in that it failed to define "resident" and thus should be construed against the insurer; and (3) Pennsylvania public policy requires that insurance funds be made available to satisfy the claims of children injured in a foster care facility.

## II. Discussion

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A disputed factual matter is a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court is to make its determination after considering the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party. *Id.* at 255–56, 106 S.Ct. at 2513–14.

The moving party's burden of production on summary judgment is to show that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A nonmoving party can overcome a summary judgment motion if it goes beyond the pleadings and produces its own affidavits, depositions, answers to interrogatories, and admissions which identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

### B. Plaintiff Merchants Mutual's Motion for Summary Judgment

Merchants Mutual argues that as a matter of law, the foster children killed in the Artises' home were residents of the household, and their claims are excluded from coverage under the homeowners policy. Thus, Plaintiff argues it was justified in its decision to withdraw from the defense of the Artises in the underlying wrongful death actions. Neither Plaintiff nor Defendants cite any Pennsylvania case discussing the application of the Merchants Mutual "resident insured" homeowners policy exclusion to the claims of foster children, nor was this court able to locate any. Accordingly, this court must predict how Pennsylvania appellate courts would resolve this issue. *See Keystone Aeronautics Corp. v. R.J. Enstrom Corp.*, 499 F.2d 146, 147 (3d Cir.1974).

Merchants Mutual argues that the four deceased foster children were residents of the Artis household under the plain meaning of the term "resident of the household"; therefore, they were insureds under the poli-

cy and their claims are not covered due to the "resident insured" exclusion. *See* text of Merchants Mutual policy exclusion, *supra* page 888. Under the policy, in order for the deceased children to be considered insureds, they must have been under twenty-one years of age, in the care of an insured, and a resident of the Artises' household. These criteria are met here. The children were all well under the age of twenty-one at the time of their deaths.[1] Because of their youth, the children were clearly "in the care of" the Artises, who were under contract with the Department of Human Services (hereinafter DHS) to provide the children with food and shelter in their home. While the Estates argue that the children were *legally* "in the care of" DHS, here we are not concerned with which person or entity had legal custody of the children. Rather, the question is whether the children were "in the care of" a resident of the insured household under the terms of the homeowners policy issued by Merchants Mutual to the Artises. By virtue of the age of the children and the contract with DHS, the conclusion is inescapable that the deceased children were "in the care of" the Artises.

The crucial question then becomes whether the deceased children were "residents" of the Artises' household. The Estates argue that use of the word "resident" creates an ambiguity in the insurance contract, and that this ambiguity should be construed against the insurer. "Resident of the household" is not defined in the Merchants Mutual policy. When construing insurance policies under Pennsylvania law, unambiguous terms are to be given their plain and ordinary meaning. *St. Paul Fire and Marine Ins. Co. v. Lewis*, 935 F.2d 1428 (3d Cir.1991). A "resident" is "a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration; it signifies one having a residence, or one who resides or abides." Black's Law Dictionary 1309 (6th ed. 1990). There is no ambiguity in the use of the word "resident" in the Merchants Mutual policy, and thus the word will be given its plain and ordinary meaning. *See St. Paul Fire and Marine*, 935 F.2d at 1428. Both

Preston and Keith Moye had lived in the Artis household for at least nine months, and the evidence presented by both parties confirms that no date had ever been set for their removal from foster care. Anwan Reid lived with the Artises for two years and nine months, and there were no plans to reunite him with his natural parents. Robert Lavenhouse lived with the Artises for over ten years, and the evidence is that DHS caseworkers thought he would remain in foster care until his eighteenth birthday. *See* Ex. J & K to Pl.'s Answer to Intervenor's Cross–Motion for Summ.J. Under the plain meaning and common usage of the term, clearly the deceased children were "residents" of the Artises' household.

Thus, the deceased foster children were insureds under the Merchants Mutual homeowners policy. Any claims resulting from their death are expressly excluded from coverage under the policy. Other state courts, interpreting the same policy language in the context of claims brought by, or on behalf of, foster children against the owners of their foster homes have reached the same conclusion. *See Prudential Property & Cas. Ins. Co. v. LaMarr*, 92 Ohio App.3d 331, 635 N.E.2d 63 (1993); *Jenks v. State*, 507 So.2d 877 (La.Ct.App.1987).

■ The Estates argue that Pennsylvania public policy requires that a foster home be insured to cover any claims brought by injured foster children, and thus the "resident insured" exclusion of the Merchants Mutual policy is invalid here because it contravenes state policy. In support of this argument, the Estates cite 51 Pennsylvania Code § 3130.90 and its comments, which require that persons providing foster care purchase fire and general liability insurance for the property where such care is provided. *See* 51 Pa.Code § 3130.90. The Estates contend this provision indicates that it is the State of Pennsylvania's policy that homeowners insurance should act as a fund to satisfy the claims of injured foster children, and thus the "resident insured" exclusion of a homeowners policy is void when the claimant is a

---

1. At the time of their deaths, the children's ages were: Preston Moye, five years old; Keith Moye, seven; Anwan Reid, eight; and Robert Lavenhouse, fourteen.

foster child. The Estates' argument is without merit. Section 3130.90 applies to foster care providers, not insurers. On its face, the provision is inapplicable to Merchants Mutual, and thus cannot support the Estates' theory that Pennsylvania public policy bars the application of the resident insured exclusion because the claims are brought by foster children. In addition, the Estates mischaracterize the public policy which is furthered by § 3130.90. The section was not designed to provide a fund to pay the claims of injured foster children. Instead, § 3130.90 is designed to ensure that foster homes are safe. In requiring foster care providers to purchase fire and liability insurance, the State presumes that foster parents will take steps to repair and make their premises safe, which would lead to lower premiums and also protect the health and safety of foster children residing in the home. Furthering this goal does not require that the "resident insured" exclusion be read out of the Merchants Mutual homeowners policy.

There is no genuine issue as to any material fact. Under the plain language of the policy at issue the foster children were residents of the Artis household and thus the claims asserted on their behalf are excluded from coverage.

## C. Defendant Estates' Motion for Summary Judgment

■ The Estates, in their Motion for Summary Judgment, argue that Merchants Mutual should be estopped from denying the Artises a defense and indemnification regardless of whether the "resident insured" exclusion is applicable. In arguing for an estoppel, the Estates contend: (1) that the reservation of rights letters sent by Merchants Mutual and its agents did not inform the Artises that coverage might be denied due to the "resident insured" policy exclusion, and (2) that the Artises detrimentally relied on Merchants Mutual once it assumed the Artises' defense.

■ Under Pennsylvania law, the general rule is that an insurance company may not

assume the defense of a suit which entails the defendant's relinquishing to the insurer the management of the case and then later deny liability under the policy. *Jones v. Robbins*, 258 F.Supp. 585, 588 (E.D.Pa.1966), *aff'd*, 374 F.2d 1002 (3d Cir.1967). However, the insurer may protect its rights under the policy by a timely reservation of rights which fairly informs the insured of the insurer's position. *Aetna Life and Cas. Co. v. McCabe*, 556 F.Supp. 1342, 1354 (E.D.Pa. 1983). When seeking to estop an insurer from withdrawing from a case, the burden rests on the party asserting an estoppel to establish the defense by clear, precise, and unequivocal evidence. *Mendel v. Home Ins. Co.*, 806 F.Supp. 1206, 1215 (E.D.Pa.1992). A party seeking to establish an estoppel must show "an inducement by the party sought to be estopped ... to the party who asserts the estoppel ... to believe certain facts to exist—and the party asserting the estoppel acts in reliance on that belief." *Sabino v. Junio*, 441 Pa. 222, 225, 272 A.2d 508, 510 (1971). A determination of whether the insured relied to its detriment on an insurer's conduct requires an analysis of the facts relating to whether the party asserting estoppel has been prejudiced by the conduct of the insurer. *See Mendel*, 806 F.Supp. at 1215. Thus, courts may apply an estoppel only when there is actual prejudice, such as when an insurer's failure to assert all possible defenses in a reservation of rights letter causes an insured to act to his detriment in reliance thereon. *Id.*

■ Initially, the Estates argue that Merchants Mutual never properly reserved its right to enforce the "resident insured" coverage exclusion because the two purported reservation of rights letters sent to the Artises failed to make any mention of the exclusion. *See* 7C Appleman, Insurance Law and Practice § 4649, at 353 (Berdal ed. 1979). There is no question that Merchants Mutual's reservation of rights letters made no specific reference to the "resident insured" exclusion which was eventually relied upon by Merchants in its disclaimer.[2] However, insurers

---

**2.** The first reservation of rights letter was sent to the Artises on September 8, 1989 by Charles Farrington, an insurance adjuster working on

behalf of Merchants Mutual. *See* Ex. E to Pl.'s Answer to Intervenors' Counter–Motion for Summ.J. The letter merely informs the Artises

who attempt to deny coverage are estopped from raising defenses not included in reservation of rights letters only if their failure to raise all possible defenses has caused actual prejudice to the insured. *Mendel,* 806 F.Supp. at 1215. Here, viewing the evidence in a light most favorable to the Intervenors, this Court concludes that the Artises would be unable to demonstrate such actual prejudice.

The Estates rely on *Aetna Life and Casualty Co. v. McCabe,* 556 F.Supp. 1342 (E.D.Pa.1983) to support their contention that the Artises suffered actual prejudice as a result of Merchants Mutual's withdrawal. In *McCabe,* the court granted summary judgment and estopped an insurer from disclaiming coverage. However, in that case the insurer's reservation of rights letter was issued more than a year after the complaint was filed, three days before the scheduled trial, and less than six months before the ultimate trial. The reservation of rights was found untimely because the insurer's delay denied the insured the opportunity to use his personal attorney in investigating the case and conducting discovery. The court found that an estoppel was warranted under these facts since the insured was able to show sufficient prejudice. *Id.* at 1354–55. In the present case, a reservation of rights letter was issued within days of the fire at the Artises' home. While the letter did not specifically mention the "resident insured" exclusion, it put the Artises on notice of a potential denial of coverage. While three years had elapsed from the date of the fire until Merchants Mutual ultimately disclaimed coverage, unlike the insurer in *McCabe* the Artises were on notice of a coverage dispute from the very beginning.

The more recent case of *Beckwith Machinery Co. v. Travelers Indemnity Co.,* 638 F.Supp. 1179 (W.D.Pa.1986), is more informative regarding the prejudice required to effect an estoppel under Pennsylvania law. In *Beckwith,* the insurer abruptly denied coverage after the insured had relied upon it for coverage for thirteen months. No reservation of rights letter was ever issued, and the court found that Travelers failed to conduct a proper investigation or a thorough discovery. *Id.* at 1187–88. Summary judgment was granted to the insured on an estoppel theory because the court found the insured had suffered *actual* prejudice.

■ In the present case, there is no evidence that the representation provided by the Margolis law firm resulted in any prejudice to the Artises. The Estates have not provided any evidence that Margolis conducted the representation in anything but a thorough and competent manner. As previously discussed, prejudice may not be presumed, it must be conclusively established in order to effect an estoppel. *Mendel,* 806 F.Supp. at 1216. *See, e.g., Employer's Reinsurance Corp. v. Sarris,* 746 F.Supp. 560, 568 (E.D.Pa.1990) (no estoppel where insurer disclaimed coverage after general reservation of rights was issued and competent defense provided up until time of disclaimer). The

---

that Merchants Mutual hired Farrington to investigate the circumstances of the fire. The letter does have a heading of *"RESERVATION OF RIGHTS,"* but the only language addressing a reservation of Merchant Mutual's rights appears at the very end of the letter, stating: "All the conditions specified in the policy are expressly reserved and the rights of our clients are not to be deemed waived in any way." No mention is made of any specific policy provision upon which Merchants might rely in denying the Artises a defense or indemnification.

The second reservation of rights letter was sent on December 6, 1989, by J. Lee Green, a claims manager for Merchants Mutual. *See* Ex. F to Pl.'s Answer to Intervenor's Counter–Motion for Summ.J. This letter informed the Artises that their son-in-law, William Smith, was not acting as an agent for Merchants Mutual, and that if he continued to conduct settlement negotiations on the Artises' behalf, the insurer would not be liable for any payments that might be made to the injured parties as a result of any settlement. Merchants Mutual cited the "Duties after loss" provisions of the Artises' homeowners policy as supporting their position. The "Duties after loss" provisions specifically prohibit the Artises from conducting settlement negotiations without the involvement of counsel from Merchants Mutual. The letter concludes: "[W]e must advise you that we will be handling this matter under a complete reservation of all of our rights as they apply to the terms and conditions of the insurance contract." Once again, no mention is made of the "resident insured" exclusion which Merchants Mutual eventually relied upon in denying coverage in May of 1992. *See* Ex. G to Pl.'s Answer to Intervenor's Counter–Motion for Summ.J.

Estates have not produced any affidavits or deposition testimony supporting their assertion that Merchants Mutual's delay in asserting its policy defenses prejudiced the Artises. This lack of evidence alone is enough to defeat the Estates' Motion.

Notwithstanding the lack of evidence to support their Motion for Summary Judgment, the Estates argue that the Artises suffered sufficient prejudice to warrant an estoppel. They argue that the Artises acted in detrimental reliance on Merchants' December 6, 1989, letter which warned the Artises that Merchants would not be liable for any settlement negotiated by their son-in-law, William Smith. The letter also ordered them to cease the settlement negotiations. The Estates argue that the Artises relied on this letter and Merchants' representation of coverage by restraining William Smith from settling the Estates' claims and by relinquishing total management of the defense of the Estates' wrongful death actions to Merchants Mutual.[3]

The Estates' claim that the Artises were prejudiced rings hollow in light of the fact that after Merchants withdrew from the case, the Artises resumed negotiations with the Estates and, on the advice of their son-in-law William Smith, reached an agreement on January 4, 1993, in which the Estates entered into a consent decree whereby a judgment for $1.6 million[4] was entered against the Artises and in favor of the Estates. This was a non-recourse settlement; the Estates agreed not to move against the Artises' personal assets, home, or life savings in exchange for the Artises assigning their rights against Merchants Mutual to the Estates. This settlement was approved by the court on January 5, 1993.

The record shows that the Artises' assets remain protected, and that they were provided with a complete and competent defense by the Margolis law firm before Merchants Mutual ordered the firm to withdraw. The Estates have failed to demonstrate that the Artises suffered any prejudice, and thus Merchants cannot be estopped from denying coverage. Accordingly, the Defendant Estates Cross–Motion for Summary Judgment is denied.

---

**3.** William Smith had prepared contracts of release when Merchants Mutual intervened in December 1989, and demanded that the Artises discontinue their independent settlement negotiations with the Estates.

**4.** The maximum coverage under the Merchants Mutual homeowners policy was $300,000.00.