TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING







NO. 03-99-00426-CV







Bonnie Easter as next friend of M. D. E., Appellant



v.



Providence Lloyds Insurance Company, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 97-09409, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING








 The opinion and judgment issued herein on March 9, 2000 are withdrawn, and the
following opinion is substituted in lieu of the earlier one.

 Appellant, Bonnie Easter as next friend of M.D.E., sued M.D.E.'s foster parents,
Joseph and Grace Bossette, for injuries M.D.E. sustained while in the Bossette home. Easter
obtained a default judgment against the Bossettes, then sued appellee, Providence Lloyds
Insurance Company, the Bossettes' homeowners' insurer. The district court granted Providence
Lloyds' motion for summary judgment. On appeal, Easter contends the trial court erred in
granting Providence Lloyds' motion. Because we conclude that M.D.E. was a "resident" of the
Bossette household and therefore an "insured" precluded from recovering under the Bossettes'
homeowners' policy, we will affirm the district court's judgment. In addition, we deny
Providence Lloyds' motion for frivolous appeal damages under Texas Rule of Appellate Procedure
45.


FACTUAL AND PROCEDURAL BACKGROUND

 Bonnie Easter was having a difficult time dealing with the emotional and behavioral
problems her daughter M.D.E. was exhibiting, and in February 1995 she placed M.D.E. in the
care of Joseph and Grace Bossette, licensed foster parents. M.D.E. was nine years old at the
time. Easter intended the placement to be for no more than six months.

 Soon after M.D.E.'s arrival in the Bossettes' home, Joseph Bossette began sexually
molesting her. After approximately five months, M.D.E. reported the abuse to Child Protective
Services. She was removed from the Bossettes' home and returned to her mother. In February
1996, Easter brought suit on M.D.E.'s behalf against Joseph Bossette for an intentional tort for
committing the abuse, and against Grace Bossette for negligence for failing to stop or report the
molestation. A default judgment was rendered against the Bossettes for $300,000. Easter then
brought the present action against Providence Lloyds to enforce the judgment against the
Bossettes' homeowners' insurance carrier.

 On appeal, Easter contends the district court erred in granting summary judgment
for Providence Lloyds because genuine issues of material fact exist as to: (1) whether foster
parenting is a "business pursuit" for purposes of an exclusionary clause in the Bossettes'
homeowners' policy; (2) whether Grace Bossette's negligence was an activity "ordinarily
incidental to a non-business pursuit" and thus excepted from the exclusion; (3) whether M.D.E.
was a "resident" of the Bossette household and therefore an "insured" not eligible for recovery
under the policy; and (4) whether Providence Lloyds was prejudiced by the Bossettes' alleged
failure to cooperate in the defense of the underlying lawsuit. Additionally, Easter contends that
the district court erred because as a matter of law: (1) the term "resident" in the insurance
contract is vague and raises an issue of material fact; and (2) Grace Bossette acted negligently,
not intentionally; thus, her acts were not excluded under the policy.


DISCUSSION

 In her third issue on appeal, Easter contends that M.D.E. was not a "resident" of
the Bossettes' household. If M.D.E. is deemed a resident, she is an "insured" under the policy;
the policy excludes coverage for "bodily injuries sustained by an insured."

 The standard for reviewing a trial court's grant of a motion for summary judgment
is well established: (1) the movant for summary judgment has the burden of showing that no
genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in
deciding whether there is a disputed material fact issue precluding summary judgment, evidence
favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be
indulged in favor of the nonmovant and any doubts resolved in its favor. See Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). The function of summary
judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently
unmeritorious claims and defenses. See Swilley v. Hughes, 488 S.W.2d 64, 68 (Tex. 1972).

 Under the Bossettes' contract for homeowners' insurance, personal liability
coverage does not apply to injuries to "insureds." "Insureds" are defined as: "you and residents
of your household who are: a) your relatives; or b) other persons under the age of 21 and under
the care of [Joseph or Grace Bossette]." M.D.E. was undisputedly under 21 and under the care
of the Bossettes; therefore, the pivotal question is whether M.D.E. was a "resident" of the
Bossette household.

 In general, Texas cases determining residency have relied on the child's
relationship to the household, the nature of the child's stay in the home, and the intent of the
parties. In Hartford Casualty Insurance Co. v. Phillips, 575 S.W.2d 62 (Tex. Civ.
App.--Texarkana 1978, no writ), a fourteen-year old boy left some clothes at his mother's home
and visited her regularly. Id. at 63. Even though his mother had been awarded legal custody,
the boy lived primarily with his father. See id. Nonetheless, he was held to be a resident of his
mother's home for insurance purposes. See id. In Travelers Indemnity Company v. Mattox, 345
S.W.2d 290 (Tex. Civ. App.--Texarkana 1961, writ ref'd n.r.e.), the court upheld a jury finding
that a minor son living temporarily away from his father was a resident of his father's home under
an auto insurance policy. Id. at 292. Most of the son's personal belongings were still at his
father's home, and he intended to return there to live. See id. at 291. In each of these cases, the
child had a blood relationship with others in the household despite having an insignificant presence
in the home. Although the children did not regularly live in the household, attend school from
there, or even regularly eat meals there, the combination of their relationship to the household and
the intent of the parties to continue that relationship was enough to establish residency.

 M.D.E. presents a different scenario. A foster parent/child relationship is not as
close or as permanent as a normal parent/child relationship; however, M.D.E.'s presence in the
Bossettes' home was much more profound than the presence of the children in either Phillips or
Mattox. It is undisputed that, for a period of at least five months, M.D.E. lived in the Bossette
home, ate her meals there, and shared a bedroom with other foster children over whom the
Bossettes had day-to-day authority and responsibility. Her relationship to the household and the
nature of her stay convince us that M.D.E. was a resident of the Bossettes' home during her five-month stay there.

 Easter argues that M.D.E. was still a resident of her mother's home and therefore
could not also be a resident in the Bossettes' home. She cites several cases that indicate that one
can be a member of a household even if temporarily absent, asserting "[t]he real test is whether
the absence of the party of interest from the household of the alleged insured is intended to be
permanent or only temporary--i.e., whether there is physical absence coupled with an intent not
to return." Southern Farm Bureau Cas. Ins. Co. v. Kimball, 552 S.W.2d 207, 208 (Tex. Civ.
App.--Waco 1977, writ ref'd n.r.e.). Although M.D.E. was physically absent from her mother's
home, there is evidence to show that the absence was only temporary and that she would return
after her mother "got back on her feet." Based on these facts, one could conclude that M.D.E.
was a resident of her mother's household even as she was living with the Bossettes. This does
not, however, preclude her from being a resident of the Bossette household at the same time. See
Hartford, 575 S.W.2d at 63. (1)

 The Hartford court stated a person could have more than one residence, especially
when that person is a minor. See id. We agree. Therefore, even assuming M.D.E. was still a
resident in her mother's home, this does not foreclose the possibility that she was also a resident
of the Bossette household. As stated above, we are satisfied that where, as here, a child lives in
a foster family home for a period of five months, the child is, as a matter of law, a resident of that
household.

 Whether a foster placement establishes residency for insurance purposes is a
question of first impression in Texas. Accordingly, Easter urges us to look at how other
jurisdictions have resolved the same issue. Easter argues that under the residency test used in
several other jurisdictions, M.D.E. would not be considered a resident of the Bossette household
for insurance purposes. See Pamperin v. Milwaukee Mut. Ins. Co., 197 N.W.2d 783, 787 (Wis. 
1972). In Pamperin, the Wisconsin Supreme Court held the child is a resident of a home where
the parties are (1) living under the same roof; (2) in a close, intimate, and informal relationship;
and (3) where the intended duration is likely to be substantial, where it is consistent with the
informality of the relationship, and where it is reasonable to conclude that the parties would
consider the relationship "in contracting about such matters as insurance or in their conduct in
reliance thereon." Id. at 788-89. These factors are to be considered as a whole, with no one
factor predominating. See id. at 789. (2)

 We find it unnecessary to adopt Pamperin in the present case but briefly note that
close analysis of the Pamperin test and accompanying case law shows that, even under the
Pamperin analysis, M.D.E. would be considered a resident of the Bossette household.

 It is uncontroverted that M.D.E. was living under the same roof as the Bossettes;
thus, only the last two factors--intimacy of the relationship and duration of stay--are disputed. 
Easter asserts that M.D.E. was not in a "close, intimate and informal relationship" because the
Bossettes abused and threatened her. We disagree. Foster parents by nature stand in an intimate
relationship of care and responsibility vis-à-vis foster children, irrespective of the quality of the
care actually provided by an individual foster family. Easter's logic would mean that no child
could be a resident of a household where she was abused, clearly an unreasonable result.


 Regarding the third factor, the Pamperin court noted: "[T]he subjective or declared
intent . . . while a fact to be considered, is not controlling, but the intended duration oftentimes
must be determined only after a thorough examination of all the relevant facts and circumstances
surrounding the relationship." Id. at 788. In other words, merely placing the label "temporary"
on a stay that would otherwise be considered substantial does not change the fundamental nature
of the relationship. While all foster family relationships are necessarily temporary, some are
"temporary" for several years. After five months of living in the Bossette's home and being
treated as a member of the family, we believe that M.D.E. was a resident of the Bossette
household. (3)


CONCLUSION

 Because M.D.E. lived in the Bossette home in a family-like environment for a
period of at least five months, we hold that, as a matter of law, M.D.E. was a resident of the
Bossette household. She is therefore an insured under the policy and is precluded from recovering
for the injuries she sustained in the Bossettes' home. Because Providence Lloyds has shown that
it is entitled to judgment as a matter of law, we need not address Easter's other issues on appeal. 
We affirm the trial court's grant of summary judgment.

 Regarding Providence Lloyd's motion for frivolous-appeal damages, we conclude
that Easter had a reasonable expectation of reversal and there has been no showing that she
pursued this appeal in bad faith. See In re Long, 946 S.W.2d 97, 99 (Tex. App.--San Antonio
1997, no writ). Providence Lloyd's motion for damages under Texas Rule of Appellate Procedure
45 is denied.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: May 4, 2000

Publish
1. Providence Lloyds asserts M.D.E. was actually with the Bossettes for a span of seven
to eight months. The record is inconclusive on the actual length of M.D.E.'s stay with the
Bossettes. Giving the non-movant every positive inference, we defer to Easter's evidence that
M.D.E. stayed in the Bossettes' home for five months of an intended six-month stay.
2. Other jurisdictions have also adopted Wisconsin's Pamperin test. See Blanchard v.
Peerless Ins. Co., 958 F.2d 483, 489 (1st Cir. 1992); Nationwide Mut. Ins. Co. v. Budd-Baldwin,
947 F.2d 1098, 1102 (3d Cir. 1991); State Farm Fire & Cas. v. Vaughn, 803 F.Supp. 1446, 1450
(S.D. Ind. 1992); Dartez v. Atlas Assur. Co., 721 So.2d 109, 112 (La. Ct. App. 1998); Donegal
Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 546 A.2d 1212, 1216 (Pa. Super. Ct. 1988);
Allstate Ins. Co. v. Tomaszewski, 447 N.W.2d 849, 851 (Mich. Ct. App. 1989).
3. Applying the Pamperin factors to a foster child situation very similar to the present case,
the Wisconsin Court of Appeals found a child to be a resident of a foster home as a matter of law. 
See Waite v. Travelers Ins. Co., 331 N.W.2d 643, 645 (Wis. App. 1983). The court also held
that a foster family is a "close, intimate and informal" relationship by design and thus easily meets
the second factor of the Pamperin test.



SPAN STYLE="font-family: CG Times Regular"> It is uncontroverted that M.D.E. was living under the same roof as the Bossettes;
thus, only the last two factors--intimacy of the relationship and duration of stay--are disputed. 
Easter asserts that M.D.E. was not in a "close, intimate and informal relationship" because the
Bossettes abused and threatened her. We disagree. Foster parents by nature stand in an intimate
relationship of care and responsibility vis-à-vis foster children, irrespective of the quality of the
care actually provided by an individual foster family. Easter's logic would mean that no child
could be a resident of a household where she was abused, clearly an unreasonable result.


 Regarding the third factor, the Pamperin court noted: "[T]he subjective or declared
intent . . . while a fact to be considered, is not controlling, but the intended duration oftentimes
must be determined only after a thorough examination of all the relevant facts and circumstances
surrounding the relationship." Id. at 788. In other words, merely placing the label "temporary"
on a stay that would otherwise be considered substantial does not change the fundamental nature
of the relationship. While all foster family relationships are necessarily temporary, some are
"temporary" for several years. After five months of