**ALLSTATE INSURANCE COMPANY,**
Appellant,

v.

**Melissa V. FALGOUST; Douglas J. Falgoust; D.D., a minor, by and through his guardian ad litem; A.J., a minor, by and through his guardian ad litem; State of Alaska, Department of Administration,** Appellees.

No. S–12090.

Supreme Court of Alaska.

June 1, 2007.

---

**32.** *Id.* at 287.

Alfred Clayton, Jr., Maryanne Boreen, Bliss, Wilkens & Clayton, Anchorage, for Appellant.

Christine S. Schleuss, Anchorage, for Appellees D.D. and A.J.

Megan R. Webb, Assistant Attorney General, Anchorage, David W. Márquez, Attorney General, Juneau, for Appellee State of Alaska, Department of Administration.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

The household exclusion in a homeowner's policy bars from liability coverage the claims of an "insured person" against the named insured. "Insured person" includes "any dependent person in [the named insured's] care" "if a resident of [the named insured's] household." The question presented is whether a foster child is an "insured person" under the household exclusion. We answer in the affirmative. Foster children readily meet the "insured person" definition, and other jurisdictions have so held.

## II. FACTS AND PROCEEDINGS

This is a declaratory judgment action brought by Allstate Insurance Company. Allstate's amended complaint sought a declaration that the household exclusion in the homeowner's policy that it issued to Melissa and Douglas Falgoust excluded liability coverage of claims that the Falgousts' former foster children D.D. and A.J. had asserted against the Falgousts. Allstate also sought a declaration that if its policy covered these claims, the coverage Allstate provided was excess to coverage provided by the State of Alaska. The final count of Allstate's amended complaint asserted a claim for equitable subrogation against the State. This count concerned the claim of the estate of a third foster child, S.M., who died as a consequence of an assault on him by Melissa Falgoust. Allstate settled this claim and sought reimbursement from the State for its defense costs and the amount of the settlement.

The superior court set the context of this case as follows:

1. In 1996, Melissa and Douglas Falgoust became licensed foster parents through the Division of Family and Youth Services ("DFYS"), State of

Alaska Department of Health and Social Services.

2. Between 1997 and July 27, 1999, the Falgousts were the foster parents of D.D., a minor, and A.J., a minor. S.M., a minor, was also placed with the Falgousts for foster care between June 1998 and July 27, 1999.

3. On July 27, 1999, Melissa Falgoust fatally injured S.M. Melissa Falgoust pled "no contest" and was convicted of manslaughter, a Class A felony in violation of AS 11.41.120.

4. Douglas Falgoust was never charged with a crime relating to S.M.'s death.

5. A.J. and D.D. claim that they sustained damages as a result of events they witnessed in the Falgousts' foster home. They also claim that they suffered abuse in the Falgousts' foster home prior to July 27, 1999.

6. Neither of the Falgousts were charged with criminal conduct relating to their treatment of A.J. and D.D. There have not been any findings of fact made in a civil or criminal proceeding relating to A.J.'s and D.D.'s treatment in the Falgousts' care.

7. Allstate Insurance Company ("Allstate") provided homeowners insurance to Melissa and Douglas Falgoust for their residence in Anchorage, Alaska where they lived with the three foster children.

8. Allstate and the State of Alaska settled claims presented by S.M.'s estate.

9 Allstate's Amended Complaint for declaratory relief against Melissa Falgoust, Douglas Falgoust, D.D., A.J., and Department of Administration, State of Alaska, filed April 17, 2003, seeks: (1) declaration of no coverage for Melissa Falgoust arising from D.D.'s claims; (2) declaration of no coverage for Douglas Falgoust arising from D.D.'s claims; (3) declaration that Allstate's coverage of Melissa Falgoust arising from D.D.'s claim, if any, is excess; (4) declaration that Allstate's coverage of Douglas Falgoust arising from D.D.'s claim, if any, is excess; (5) declaration of no coverage for Melissa Falgoust arising from A.J.'s claim; (6) declaration of no coverage for Douglas Falgoust arising from A.J.'s claim; (7) declaration that Allstate's coverage of Melissa Falgoust arising from A.J.'s claim, if any, is excess; (8) declaration that Allstate's coverage of Douglas Falgoust arising from A.J.'s claim, if any, is excess; and (9) equitable subrogation.

10. In a separate case pending in the superior court, D.D. and A.J. filed a complaint against the State of Alaska, Department of Health and Social Services, Office of Children's Services, Douglas Falgoust and Melissa Falgoust alleging claims arising from acts or omissions of the Falgousts while A.J. and D.D. were in their care. *See* Case No. 3AN–04–4058 Civil.

11. The Alaska Foster Parent Handbook was prepared by DFYS (now Office of Children's Services). The Handbook is supposed to be given to all foster parents. It has a section called, "Liability Insurance" that states, in part:

Liability coverage is provided for all Division of Family and Youth Services foster families.... This coverage is designed for legal actions brought against the foster parents because of accidental injury to the child or damage caused by the child to someone else's property or person. This coverage is in effect during any period in which you are providing foster care.

12. 7 AAC 53.100 provides, in part:

(a) It is the policy of the State of Alaska ... to indemnify and defend a foster parent for injuries occurring during the performance and within the scope of duty of the foster care program, including (1) accidental injury to a child placed by the division; or (2) injury to others by a child placed by the division. (b) The state will not defend or indemnify foster parents for acts of intentional and willful misconduct....

13. The State is self-insured for any obligation it has to defend or indemnify foster parents.

14. Allstate's homeowner's policy provides that it is to be treated as excess coverage when there is other insurance for a loss. (Other Coverage Clause).

With respect to the claims in the separate tort action described by the superior court in paragraph 10, Allstate is currently defending the Falgousts under a reservation of rights.

In the present action Allstate moved for summary judgment. Allstate sought (1) a declaration that the household exclusion relieves Allstate from any duty to defend or indemnify the Falgousts with respect to the claims of D.D. and A.J.; and (2) a declaration that the State is the primary insurer of the Falgousts and that any coverage by Allstate is excess to the State's coverage. The superior court denied both aspects of Allstate's motion.

The superior court then held a status conference in order to determine what issues remained to be resolved. Allstate argued that the court should issue a declaration that the State has a duty to defend the Falgousts with respect to the claims brought against them by D.D. and A.J. Allstate noted that it was presently conducting the defense of these claims and that it had an equitable claim against the State for its defense costs. The State countered that the question of the State's duty to defend the Falgousts on the claims of A.J. and D.D. was not before the court and properly should be decided in the separate tort action that had been brought by A.J. and D.D. No decision was made on this question at the status conference. Soon after the conference Allstate filed a memorandum arguing that its claims against the State concerning the defense of the claims of D.D. and A.J. were fairly within its amended complaint.

At about the same time, the State filed a motion for summary judgment seeking dismissal of Allstate's equitable subrogation claim arising out of Allstate's settlement on behalf of the Falgousts with the estate of S.M. Allstate did not directly oppose this motion. Instead, it moved for leave to file a second amended complaint. The proposed second amended complaint deleted the subrogation claim in the amended complaint with respect to the defense and settlement of the claim of the estate of S.M. The proposed second amended complaint also sought a declaration that the State had a duty to defend and indemnify the Falgousts for some or all of the claims asserted by A.J. and D.D. and sought damages against the State for Allstate's costs incurred in defending the Falgousts with respect to those claims. The superior court denied Allstate's motion to file a second amended complaint, stating that Allstate could seek the same relief in the tort action filed by A.J. and D.D. Subsequently, the court granted the State's motion for summary judgment pertaining to Allstate's equitable subrogation claim relating to the claim of the estate of S.M., observing that Allstate had not opposed the motion.

Allstate asked the superior court to incorporate its various rulings into a final judgment so that Allstate could appeal. The court obliged and entered written findings of fact, conclusions of law, and a final judgment against Allstate in favor of the Falgousts and the State.

Allstate now appeals, challenging the superior court's conclusion that the household exclusion in the Falgousts' homeowner's policy did not exclude the claims of A.J. and D.D. and the court's refusal to entertain Allstate's claim that the State has a duty to defend the Falgousts with respect to the claims of D.D. and A.J.

## III. DISCUSSION

### A. The Household Exclusion Applies.

■ The main question presented in this case is whether the claims of the former foster children A.J. and D.D. against the Falgousts are excluded by the terms of the household exclusion in the Falgousts' homeowner's policy.

The liability insurance coverage provided by the homeowner's policy issued by Allstate to the Falgousts protects "insured person[s]" from liability claims brought by others. The term "insured person[s]" encompasses the

Falgousts as named insureds and also includes relatives and dependent persons in the Falgousts' care residing with the Falgousts. The homeowner's policy defines "insured persons" as:

> **"Insured person(s)"**—means **you** and, if a resident of **your** household:
>
> (a) any relative; and
>
> (b) any dependent person in **your** care.

(Emphasis in original.) The policy defines "you" and "your" as the named insured:

> **"You"** or **"your"**—means the person named on the Policy Declarations as the insured and that person's resident spouse. [Here, Douglas and Melissa Falgoust.]

(Emphasis in original.)

Although the policy thus broadens the category of insured persons to include resident relatives and dependents, it also provides that claims brought by insured persons against other insured persons under the policy are excluded from liability coverage. The exclusion provides:

> **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by · an insured person whenever any benefit of this coverage would accrue directly or indirectly to an **insured person.**

(Emphasis in original.) This is the so-called household exclusion that is the centerpiece of this case.

The superior court denied Allstate's motion for summary judgment concerning the household exclusion because it concluded that the word "dependent" is ambiguous. The court stated:

Regardless of the length of placement, all foster care is intended to provide the children with a safe, caring environment where they are clothed, fed, sheltered, disciplined and supervised. Allstate is correct that there is conclusive evidence that A.J. and D.D. lived with the Falgousts for extended periods of time and that the Falgousts cared for them, but the term "dependent" is susceptible to more than one meaning. "Dependent" is often used in the sense of being financially dependent. A.J. and D.D. were in the legal custody of the State of Alaska at the time of S.M.'s death. They were financially dependent upon the State of Alaska (and, in D.D.'s case, upon his natural parents). They were not financially dependent upon [the] Falgousts.

(Citations omitted.) Having found that the term "dependent" is ambiguous, the superior court construed the ambiguity against the insurer and thus concluded that the foster children did not fall within the meaning of the term.

■ We construe insurance policies in such a way as to honor a lay insured's reasonable expectations.[1] And, as the superior court correctly observed, ambiguities in insurance policies should be construed most favorably to an insured.[2] But the latter rule only applies when there are two or more reasonable interpretations of particular policy language.[3] Here, for the reasons described below, we conclude that this condition is not present.

■ In our view the term "any dependent person" in the policy cannot reasonably be read as referring only to persons who are

1. *Allstate Ins. Co. v. Teel,* 100 P.3d 2, 6 (Alaska 2004) ("[A]lthough we will not ignore or rewrite provisions in an insurance contract, even unambiguous language in an insurance contract will be interpreted to comport with the reasonable expectations of a layperson."); *C.P. ex rel. M.L. v. Allstate Ins. Co.,* 996 P.2d 1216, 1222 (Alaska 2000) ("[B]ecause an insurance policy is a contract of adhesion, we construe it to give effect to the insured's reasonable expectations.").

2. *Morgan v. Fortis Benefits Ins. Co.,* 107 P.3d 267, 270 (Alaska 2005); *State Farm Mut. Auto. Ins. Co. v. Lawrence,* 26 P.3d 1074, 1080 (Alaska 2001); *C.P.,* 996 P.2d at 1222.

3. *See, e.g., Krossa v. All Alaskan Seafoods, Inc.,* 37 P.3d 411, 416 (Alaska 2001) ("A contract is ambiguous only if, taken as a whole, it is reasonably subject to differing interpretations." (quoting *Williams v. Crawford,* 982 P.2d 250, 253 (Alaska 1999))); 11 SAMUEL WILLISTON & RICHARD A. LORD, WILLISTON ON CONTRACTS § 30:4 (4th ed.1999) (noting that a contract is ambiguous if "the written instrument remains reasonably susceptible to at least two reasonable but conflicting meanings").

financially dependent on the named insureds. The term "any dependent person" is inclusive. The only textual limitations on the term are that the dependent person must be in the care of the named insured and a resident of the named insured's household. There is no suggestion in the policy language that some subcategories of dependent persons that satisfy these limitations are meant to be excluded.

 Policy language is construed in accordance with ordinary and customary usage.[4] The common usage of the adjective "dependent" when used to describe a person is "lacking the necessary means of support and receiving aid from others (as from persons outside the immediate family or from a private or public welfare agency)" such as "a program of assistance for children."[5] Black's first definition of the noun "dependent" is "[o]ne who relies on another for support."[6] Under these definitions foster children clearly are dependent persons.

We conclude that the term "any dependent person in your care" as used in the policy includes foster children who have been committed to the care of the named insured. If the term did not encompass foster children, it would seldom be applied. The household exclusion (setting aside for the moment the dependent person clause) encompasses any relative who is a resident of the named insured's household. Thus, all natural or adopted children of the named insured are included regardless of their dependent status. Adult dependent persons not related to the named insured are included within the

term, but that is a category that is much less common than the foster parent/child relationship.

Case law from other jurisdictions supports our conclusion. *Allstate Insurance Co. v. Thom*, from the Court of Appeals of Michigan, is squarely on point.[7] In *Thom* an insurance company sought a declaratory judgment that it did not have an obligation to defend or indemnify a foster parent whose alleged negligence caused the injury of a foster child who had been in the foster parent's custody for some eleven months.[8] The Michigan Court of Appeals held that the foster child was a "dependent person in" the foster parent's care and thus an "insured" under the household exclusion of the foster parent's homeowner's policy:

> On de novo review, we agree with the lower court that [the child] met this definition, even though [the child's] placement with the [foster parents] was temporary and the placement agency ... had ultimate responsibility and control over [the child's] care and funded his support.[9]

Other courts have also found foster children to be within the household exclusion of the homeowner's policies of their foster parents.[10] But there is a difference between the homeowner's policy in this case and the homeowner's policies in most other cases. Whereas the present policy speaks of "any dependent person in [the insured's] care," the other policies commonly refer to any person under twenty-one in the care of the insured.[11] It appears that by using the pres-

---

4. *See C.P.*, 996 P.2d at 1223 n. 41 (using the ordinary usage of the term "accident" to interpret an insurance policy).

5. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 604 (1961) (emphasis omitted).

6. BLACK'S LAW DICTIONARY 470 (rev. 8th ed.2004).

7. No. 203676, 2001 WL 1523847 (Mich.App. May 18, 2001).

8. *Id.* at * 1.

9. *Id.*

10. *Merchs. Mut. Ins. Co. v. Artis*, 907 F.Supp. 886, 890 (E.D.Pa.1995); *Country Mut. Ins. Co. v. Peoples Bank*, 286 Ill.App.3d 356, 221 Ill.Dec. 607, 675 N.E.2d 1031, 1033–34 (1997); *Pruden-*

*tial Prop. & Cas. Ins. Co. v. LaMarr*, 92 Ohio App.3d 331, 635 N.E.2d 63, 65 (1993); *State Farm Fire & Cas. Co. v. Breazell*, 324 S.C. 228, 478 S.E.2d 831, 833 (1996); *Easter ex rel. M.D.E. v. Providence Lloyds Ins. Co.*, 17 S.W.3d 788, 792 (Tex.App.2000).

11. *Merchs. Mut. Ins. Co.*, 907 F.Supp. at 888; *Country Mut. Ins. Co.*, 221 Ill.Dec. 607, 675 N.E.2d at 1033–34; *Prudential Prop. & Cas. Ins. Co.*, 635 N.E.2d at 64; *State Farm Fire & Cas. Co.*, 478 S.E.2d at 832; *Easter*, 17 S.W.3d at 790; *see also* 9A STEVEN PLITT ET AL., COUCH ON INSURANCE 3D § 128:2 (2005) (stating that it is "common" for homeowner's policies to expressly exclude from liability protection "other persons under the age of 21 and in the care of the insured or their resident relatives"); 7A JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4501.04 (Walter F.

ent language Allstate sought to broaden the "insured persons" category to include dependent adults. Since virtually all non-relative minors in the care of an insured are dependents, a convenient way to accomplish this purpose was to describe the newly broadened category in terms of dependency. Therefore, despite the language difference, we believe that these cases are persuasive precedents as to the intended operation of the household exclusion with respect to foster children.

The remaining question is whether A.J. and D.D. were residents of the Falgousts' household. The homeowner's policy does not define the term "resident." A.J. and D.D. argue that the term "resident" is ambiguous and requires further factual inquiry. We disagree.

In determining who qualifies as a resident of a household under insurance policies, we have declined to "formulate a fixed rule" but instead look closely at the facts of each case.[12] We have stated that "a child may be a resident of the household of one parent for coverage purposes even when the other parent has custody."[13] In *Dugan v. Atlanta*

*Casualty Co.*, we noted that "residents" differs from "visitors [or] guests" in that the former term requires something more than a "temporary habitation."[14] In this case, A.J. and D.D. lived with the Falgousts for periods of fifteen and seven months respectively before S.M.'s death.[15] There is no evidence that there were definite plans for either child to leave the Falgousts' care at that time.[16] Without demarcating the precise time boundary separating residents from temporary guests, we think that it is clear that A.J. and D.D. were residents of the Falgousts' household. We are supported in this view by numerous decisions of courts in other jurisdictions holding that foster children are residents for the purpose of similar homeowner's policies where the foster children had been with their foster parents for more than a few months and had no definite date of departure.[17]

We conclude that the household exclusion excludes the claims of D.D. and A.J. from coverage under the Falgousts' homeowner's policy. Allstate thus has no further obli-

Berdal ed. 1979) ("The definition of the insured in homeowners policy includes the named insured stated in the declaration of the policy and includes 'if residents of the named insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of an insured.' ").

12. *Dugan v. Atlanta Cas. Cos.*, 113 P.3d 652, 657 (Alaska 2005).

13. *Simmons v. Ins. Co. of N. Am.*, 17 P.3d 56, 64 (Alaska 2001).

14. *Dugan*, 113 P.3d at 658.

15. The record also suggests that each child had lived with the Falgousts before the immediate period of time leading to S.M.'s death such that they had each spent a total of about twenty-two months in the Falgousts' care.

16. Even if such plans existed, we are not convinced that a set date of departure would necessarily destroy residence status. Otherwise, a scheduled future move would leave children with no residence in the eyes of the law, regardless of how long they might have lived in their current placement.

17. *See Merchs. Mut. Ins. Co.*, 907 F.Supp. at 890 (holding that foster children who lived with their

foster parents for at least nine months and had no set date for departure were residents of their foster parents' household under their homeowner's policy); *Country Mut. Ins. Co.*, 221 Ill. Dec. 607, 675 N.E.2d at 1033–34 (holding that a foster child who lived with her foster parents for twelve months and had no set date for departure was a resident of her foster parents' household under their homeowner's policy); *Prudential Prop. & Cas. Ins. Co.*, 635 N.E.2d at 65 (holding that a foster child who lived with her foster parents for more than six months and had no set date for departure was a resident of her foster parents' household under their homeowner's policy); *State Farm Fire & Cas. Co.*, 478 S.E.2d at 832 (holding that a foster child who had lived with his foster parents for twenty months and had no set date for departure was a resident of his foster parents' household under their homeowner's policy); *Easter*, 17 S.W.3d at 790 (holding that a foster child who lived with her foster parents for five months was a resident of her foster parents' household under their homeowner's policy). *But see Risk Mgmt. Div., Gen. Servs. Dep't of State ex rel. Apodaca v. Farmers Ins. Co. of Ariz.*, 134 N.M. 188, 75 P.3d 404, 410 (App.2003) (remanding for the lower court to "consider 1) the intent of the parties to the insurance contract and 2) the nature of the child's stay in the foster home" where the foster child in question had lived with his foster parents for more than six months).

gation to defend the Falgousts against those claims.[18]

### B. The Court Did Not Err in Refusing To Adjudicate the State's Duty To Defend.

■ Allstate also challenges the superior court's ruling that (1) declined to adjudicate whether the State had an obligation to defend the Falgousts against the claims of D.D. and A.J.; and (2) declined to rule whether Allstate had a claim against the State for its costs incurred in the defense of those claims. It is our view that the superior court did not err concerning these points. Given the superior court's ruling that Allstate's policy provided coverage to the Falgousts, there was substantial uncertainty as to how the defense responsibility between Allstate and the State should be shared. The answer to this question was complex because of the uncertainty as to which of the claims might be partially excluded by the intentional and willful misconduct exclusion applicable to the State[19] and the similar exclusion relating to intentional or criminal acts or omissions in the Allstate policy. Without knowing which of the claims of D.D. and A.J. were excluded under these provisions, the court would face great difficulty in attempting to sort out the respective defense responsibilities of Allstate and the State.

Under today's decision the uncertainty with respect to Allstate's obligations is ended. Nonetheless, there is little to recommend remanding this case to the superior court for a declaration concerning the State's duty to defend or for adjudication of any monetary claim that Allstate may have against the State. Declaratory judgments are primarily useful because they provide parties with legal guidance regarding prospective conduct.[20] As a result of our decision on the household exclusion issue, Allstate's concerns with respect to whether it should continue to conduct its defense of the Falgousts and, if so, whether it should seek State participation in their defense are put to rest. If Allstate has a claim against the State, it has now fully taken shape, and Allstate can decide whether or not to pursue it. Allstate may do so either as a cross-claim in the separate tort action brought by D.D. and A.J., as suggested by the superior court,[21] or in an independent action. Employing a declaratory judgment proceeding is no longer either necessary or appropriate.

### IV. CONCLUSION

For the above reasons, the judgment in this case is reversed with respect to the applicability of the household exclusion and affirmed with respect to the superior court's refusal to adjudicate questions of the State's defense responsibility. This case is therefore REVERSED IN PART, AFFIRMED IN

---

18. See Merchs. Mut. Ins. Co., 907 F.Supp. at 890 (holding that an insurance company had no duty to defend or indemnify where a policy's household exclusion applied); Country Mut. Ins. Co., 221 Ill.Dec. 607, 675 N.E.2d at 1031–32 (recognizing that if a policy's household exclusion applies, the insurance company has no duty to defend or indemnify); State Farm Fire & Cas. Co., 478 S.E.2d at 832 (affirming the lower court's decision that an insurance company did not have a duty to defend or indemnify because the household exclusion applied).

19. See 7 AAC 53.100(b).

20. See Anchorage Chrysler Ctr., Inc. v. Daimler-Chrysler Corp., 129 P.3d 905, 912 (Alaska 2006) (noting that two factors favoring the issue of a declaratory judgment are "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncer-

tainty, insecurity, and controversy giving rise to the proceeding" (quoting Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969))); 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2751 (3d ed. 1998) ("[The declaratory judgment remedy] gives a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a[nother] party who could sue for coercive relief has not yet done so."); 22A AM JUR 2d Declaratory Judgments § 1 (2003) ("A declaratory judgment is an action in which the court declares the rights, duties, status, or other legal relations between the parties. Declaratory judgments resolve uncertainties and controversies before obligations are repudiated, rights are invaded or wrongs are committed.").

21. If permitted by the judge in the tort case.

PART, and REMANDED for entry of judgment in accordance with this opinion.